Sean D. Garrison
BACAL & GARRISON LAW GROUP
6991 East Camelback, Ste. D-102
Scottsdale, Arizona 85251
Telephone: (480) 245-6230
Facsimile: (480) 245-6231
sean.garrison@bacalgroup.com

Edward H. Rosenthal*
Nicole Bergstrom*
FRANKFURT KURNIT KLEIN & SELZ, P.C.
488 Madison Avenue, 10th Floor
New York, New York 10022
Telephone: (212) 980-0120
Facsimile: (212) 593-9175
erosenthal@fkks.com
nbergstrom@fkks.com

Azita Iskandar*
FRANKFURT KURNIT KLEIN & SELZ, P.C.
2029 Century Park East, Suite 1060
Los Angeles, CA  90067
Telephone: (310) 579-9600
Facsimile: (310) 579-9650
aiskandar@fkks.com

* *pro hac vice* motion forthcoming

**Attorneys for Defendant Scholastic Inc.**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**
**Prescott Division**

| | |
|---|---|
| Stephen Krasemann, Darrell Gulin, Johnny Johnson, and Daniel R. Krasemann, individually and oh behalf of all other similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>Scholastic, Inc.<br><br>   Defendant. | Case No. 3:18-cv-08313<br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL ALLEGATIONS ......................................................................................... 2

ARGUMENT ................................................................................................................. 4

    I.     FIFTY FOUR (54) LICENSED USES SUBJECT TO ARBITRATION
          PROVISIONS ..................................................................................... 4

         A.     Standard for Dismissal in Favor of Arbitration ........................ 4

         B.     The Terms Governing 54 Licensed Uses Contain a Binding
             Arbitration Clause .................................................................... 5

         C.     The Clauses Cover the Present Dispute ................................... 6

    II.    SIXTY SEVEN (67) LICENSED USES SOUND IN CONTRACT
          RATHER THAN COPYRIGHT .......................................................... 7

    III.   PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF
          LIMITATIONS .................................................................................. 8

CONCLUSION ............................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ...................................................................5

*Cole v. John Wiley & Sons, Inc.*,
  No. 11 Civ. 2090 DF, 2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012) .....................6

*Cole v. Pearson Educ., Inc.*,
  No. 10 Civ. 7523, 2011 WL 4483760 (S.D.N.Y. Sept. 28, 2011) .....................6

*Coto Settlement v. Eisenberg*,
  593 F.3d 1031 (9th Cir.2010) ...................................................................3

*Dean Witter Reynolds Inc. v. Byrd*,
  470 U.S. 213 (1985) ...................................................................4

*DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*,
  870 F.3d 978 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1559, 200 L. Ed. 2d 744
  (2018) ...................................................................3

*Falcon Enters., Inc. v. Publishers Servs., Inc.*,
  438 Fed. App'x 579 (9th Cir. 2011) ...................................................................7, 8

*Graham v. James*,
  144 F.3d 229 (2d Cir. 1998) ...................................................................7

*John R. Sand & Gravel Co. v. U.S.*,
  552 U.S. 130 (2008) ...................................................................10

*John Wiley & Sons, Inc. v. DRK Photo*,
  11 Civ. 05454 (S.D.N.Y.) ...................................................................5

*John Wiley & Sons, Inc. v. DRK Photo*,
  882 F.3d 394 (2d Cir. 2018) ...................................................................3, 6

*Kyoung Ko v. Brennan*,
  740 F. App'x 623 (9th Cir. 2018) ...................................................................3

*Lefkowitz v. John Wiley & Sons, Inc.*,
  No. 13 Civ. 6414, 2014 WL 2619815 (S.D.N.Y. June 2, 2014) ...................9

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
  629 F.3d 928 (9th Cir. 2010), *as amended on denial of reh'g* (Feb. 17, 2011),
  *opinion amended and superseded on denial of reh'g*, No. 09-15932, 2011 WL
  538748 (9th Cir. Feb. 17, 2011) ...................................................................7

*Oracle USA, Inc. v. Rimini St., Inc.*,
  No. 2:10 Civ. 00106, 2015 WL 5089779 (D. Nev. Aug. 27, 2015) ...................9

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   134 S. Ct. 1962 (2014) ............................................................................................. 9

*Polar Bear Prods., Inc. v. Timex Corp.*,
   384 F.3d 700 (9th Cir. 2004) ................................................................................. 9

*Roley v. New World Pictures, Ltd.*,
   19 F.3d 479 (9th Cir. 1994) ................................................................................... 10

*Senisi v. John Wiley & Sons, Inc.*,
   No. 13 Civ. 3314, 2015 WL 256094 (S.D.N.Y. Jan. 21, 2015) ............................. 6

*Wolf v. Travolta*,
   No. CV 14-00938-CAS-PJW, 2016 WL 911469 (C.D. Cal. Mar. 4, 2016) ............ 9

*Wolf v. Travolta*,
   No. CV14-938-CAS(VBKX), 2016 WL 3150552 (C.D. Cal. Feb. 4, 2016) .................... 8, 10

*Wynn Resorts, Ltd. v. Atlantic-Pacific Capital, Inc.*,
   497 F. App'x 740 (9th Cir. 2012) .......................................................................... 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant Scholastic Inc. ("Scholastic"), by and through undersigned counsel, hereby respectfully moves this Court to dismiss, with prejudice, the Complaint filed by Plaintiffs Stephen Krasemann, Darrell Gulin, Johnny Johnson and Daniel R. Krasemann's (collectively, "Plaintiffs"), on November 6, 2018 as Dkt No. 1 (the "Complaint" or "Cplt."). As explained in more detail below, Plaintiffs' asserted copyright claims against Scholastic are precluded for one or more of the following reasons: (1) many are subject to a binding arbitration agreement; (2) some sound in contract rather than copyright; and (3) nearly all of them are barred by the statute limitations. In support hereof, Scholastic states as follows:

## PRELIMINARY STATEMENT

By their Complaint, Plaintiffs attempt to bring a copyright infringement action that extends to 166 claims based on valid licenses issued to Scholastic by their agent, DRK Photo ("DRK") – some of which date back more than twenty-five years – and an untold number of additional claims by unnamed class members. In so doing, Plaintiffs ignore the terms and conditions drafted by their agent, DRK, and incorporated into these licenses, which both bind the parties to arbitration and establish a contractual fee for any use in excess of a license. Plaintiffs' disregard of these contractual terms is especially striking given that Plaintiff Daniel R. Krasemann ("Krasemann") not only drafted them in his role as sole owner of DRK, but used the former to force similar copyright claims into arbitration in an action where he was represented by the same counsel that represents Plaintiffs here. These provisions together require dismissal of more than seventy percent (70%) of the claims identified in the Complaint.

Plaintiffs also seek to avoid the fact that their claims date back as far as 1993, with the most recent relating to a license issued to Scholastic in March 2010. Plaintiffs base this action on information that Scholastic licensed and then used their photographs, but these events that occurred beginning in 1993 and is information that Plaintiffs – and certainly Krasemann as owner of DRK – knew at the time. Nevertheless, Krasemann waited until the end of 2011 to approach Scholastic and allege widespread excesses of DRK licenses – but, this was already more than three years after 95% of these claims were licensed and used, making them untimely. Even then, although counsel negotiated a tolling agreement with Scholastic, that agreement was

limited to certain licensed uses that were expressly identified at that time.  Plaintiffs failed to expressly raise – let alone to toll – approximately a third of the claims they now seek to bring in this Complaint.  In short, the majority of Plaintiffs' claims were stale in late 2011, and are certainly stale now.  Those claims should be dismissed on statute of limitations grounds.

## FACTUAL ALLEGATIONS

According to the Complaint, Plaintiffs are professional photographers (Cplt. ¶¶ 7-10), who licensed photographs (the "Photographs") to Scholastic through their stock photo agent, DRK (*id.* ¶ 2) pursuant to "representation agreements" between Plaintiffs and DRK.  *Id.* ¶ 13.  Plaintiff Krasemann is the sole owner of DRK.  *Id.* ¶ 10.  Defendant Scholastic is a New York publisher and distributer of children's books, with its principal place of business at 557 Broadway, New York, New York 10012.  *Id.* ¶ 11.

Plaintiffs attempt to bring this case as a class action on behalf of photographers who licensed photographs to Scholastic through DRK (*id.* ¶ 1), and bring a single claim for relief purporting to sound in copyright infringement.  *Id.* ¶¶ 32-34.  As the Complaint confirms, this claim stems from a series of licenses issued to Scholastic by Plaintiffs' agent, DRK (*id.* ¶ 15 ("After obtaining access [to the Photographs], Scholastic requested and secured limited use licenses from DRK Photo.")), which are identified by invoice number and date in the Exhibits to the Complaint (the "Licenses").  *See generally id.*, Exs. A-D.  As Plaintiffs allege, the fees associated with these licenses were typically "relatively small."  *Id.* ¶ 3.  Scholastic has, to this point, collected a small number of the Licenses, and in no case is the fee for any Photograph more than a few hundred dollars.  *See generally* Declaration of Edward H. Rosenthal, dated January 7, 2019 (the "Rosenthal Decl.") ¶ 3 Ex. B.

Plaintiffs claim – without providing specific allegations in support – that these Licenses were exceeded in one or more of five generic ways, each of which simply corresponds to a categorical License limitation (*e.g.,* print run, geography, format, translation and temporal limits).  Cplt. ¶ 16.  In other words, rather than claiming with specificity *how* or *when* – or even *if* – the relevant License was exceeded, Plaintiffs make generalized allegations of infringement for all Licensed Uses.  The only actual information presented is that Scholastic licensed and

used their Photographs beginning in 1993.  *Id.*, Exs. A-D.  The result is 166 claims of

infringement dating from 1993 to 2011 (*see generally id.*, Exs. A-D (the "Licensed Uses")), and

Plaintiffs' stated intention to add 88 additional class members.  *Id.* ¶ 27.

Plaintiffs admit, however, that each of the Licenses was subject to "DRK Photo's

standard license terms and conditions" (the "Terms"), which appeared on the back of the

License.  *Id.* ¶ 28(a).  While Plaintiffs fail to attach either the Licenses or the related Terms to

their Complaint, Krasemann submitted copies of DRK's standard terms and conditions in

support of DRK's motion to dismiss claims of copyright infringement by a different publisher,

John Wiley & Sons, Inc. ("Wiley"), in favor of arbitration.[1]  *See* Rosenthal Decl., Ex. C (the

"Krasemann Declaration").  While these Terms changed over time, certain versions include two

key provisions.  *First*, for all Licenses dated on or before June 18, 1997, the Terms subject all

claims to binding arbitration.  *See* Krasemann Declaration, Ex. 2 ¶ (i); *id.*, Ex. 3 ¶ (h).  *Second*,

for Licenses dated January 5, 2000 or later, the Terms provide a contractual solution should a

license be exceeded: Scholastic receives an extended license and DRK is to invoice Scholastic

for ten times the initial license fee.  *See id.*, Ex. 6 ¶ (f); *id.*, Ex. 7.

As noted above, these Licensed Uses date back, in some cases, to 1993, with the most

recent License being issued in March 2010.  Scholastic was initially contacted by Krasemann in

late 2011, and shortly thereafter by Plaintiffs' current counsel on behalf of Krasemann and

DRK.  Rosenthal Decl. ¶ 5.  At the time, Krasemann identified certain licenses that he believed

had been exceeded and the parties exchanged limited information.  *Id.*  On August 2, 2012,

DRK and Scholastic entered into a tolling agreement regarding these claims.  *Id.* ¶ 6, Ex. F.

Following a series of decisions by courts in various Circuits holding that DRK did not have

standing to bring infringement cases on behalf of many of its photographers (*John Wiley &*

---

[1] This Court may consider these Terms on this motion to dismiss.  The invoices – and thus their
terms and conditions – are incorporated by reference into the Complaint (*see Kyoung Ko v.
Brennan*, 740 F. App'x 623 (9th Cir. 2018) (District Court properly considered agreement not
attached to Complaint in context of motion to dismiss because it was "incorporated by reference
into the first amended complaint")), and are publicly-filed documents.  *See Coto Settlement v.
Eisenberg*, 593 F.3d 1031, 1038 (9th Cir.2010) (district court may properly consider materials
incorporated into the complaint or matters of public record without converting motion to dismiss
to a motion for summary judgment.).  Scholastic also submits certain of the documents filed in
that action, which may also be considered as publicly-filed documents.

1  *Sons, Inc. v. DRK Photo*, 882 F.3d 394, 414 (2d Cir. 2018); *DRK Photo v. McGraw-Hill Glob.*

2  *Educ. Holdings, LLC*, 870 F.3d 978, 985 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1559, 200 L.

3  Ed. 2d 744 (2018)), the parties agreed that the agreement would extend "to any potential claims

4  by DRK and/or any individual photographers" identified by the parties in spreadsheets

5  exchanged on June 27, 2012, but "shall not apply to any claims by any other photographer or

6  agency or to any uses not identified on the Spreadsheets."  Rosenthal Decl. ¶ 7, Ex. G (this

7  email and the initial agreement together, the "Tolling Agreement").

8  **ARGUMENT**

9  Scholastic seeks dismissal of the Complaint on three separate grounds, that certain

10  Licensed Uses: (1) are subject to a binding arbitration provision; (2) sound in contract rather

11  than copyright; and (3) run afoul of the of the statute limitations.  While these arguments, in

12  combination, apply to all Licensed Uses, and thus require dismissal of the Complaint in its

13  entirety, not every argument applies to every Licensed Use.  To assist the Court in parsing

14  through which argument applies to which Licensed Use, Scholastic has created the chart that is

15  attached to the Rosenthal Declaration as Exhibit A (the "Chart").  The Chart includes all

16  Licensed Uses identified in Exhibits A-D of the Complaint in the order they appear, and

17  indicates which are subject to dismissal on each of the above grounds.  *Id.*

18  **I.     FIFTY FOUR (54) LICENSED USES SUBJECT TO ARBITRATION PROVISIONS**

19  Fifty four (54) Licensed Uses asserted in the Complaint and identified in the Chart are

20  subject to binding arbitration provisions and should be dismissed in favor of arbitration.

21  **A.     Standard for Dismissal in Favor of Arbitration**

22  The Federal Arbitration Act ("FAA") provides that "an agreement in writing to submit to

23  arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be

24  valid, irrevocable, and enforceable."  9 U.S.C. § 2.  As the Supreme Court has noted, the FAA

25  "leaves no place for the exercise of discretion by a district court, but instead mandates that

26  district courts *shall* direct the parties to proceed to arbitration on issues as to which an

27  agreement has been signed."  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)

28  (emphasis in original).  "Where a contract contains an arbitration clause, courts apply a

presumption of arbitrability as to particular grievances, and the party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable." *Wynn Resorts, Ltd. v. Atlantic-Pacific Capital, Inc.*, 497 F. App'x 740, 742 (9th Cir. 2012) (internal citations omitted). Arbitration is proper where: (1) a valid agreement to arbitrate exists, and (2) the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  Here, these 54 Licensed Uses should be dismissed in favor of arbitration.

### B.    The Terms Governing 54 Licensed Uses Contain a Binding Arbitration Clause

There is no dispute that the two versions of DRK's Terms that were in effect before June 18, 1997 contain binding arbitration provisions.  The Terms identified by Krasemann as being in effect "on invoices issued on or prior to July 10, 1995" (Krasemann Declaration ¶ 16(a)), includes the following arbitration provision: "Any dispute regarding this invoice, including its validity, interpretation, performance or breach shall be arbitrated in Phoenix, Arizona under the rules of the American Arbitration Association and the laws of Arizona."  *Id.*, Ex. 2 ¶ (i).  The Terms identified by Krasemann as being in effect on "invoices issued between July 11, 1995 and June 17, 1997" (*id.* ¶ 16(b)) include a nearly identical arbitration provision indicating that: "Any dispute regarding this document, including its validity, interpretation, performance or breach shall be arbitrated in Phoenix, Arizona under the rules of the American Arbitration Association and the laws of the State of Arizona."  *Id.* Ex 3 ¶ (k).

As Krasemann declared in DRK's action against Wiley (*John Wiley & Sons, Inc. v. DRK Photo*, 11 Civ. 05454 (S.D.N.Y.) (the "*Wiley* Action")), these were the standard terms and conditions DRK included on invoices in this time period.  Krasemann Declaration ¶¶ 16-17.  Krasemann went on to note that these invoices "constituted the written agreement between DRK" and, the publisher defendant in that case, Wiley, and each invoice made clear that the relevant Terms were included by printing the following text on the front of each license: "'PLEASE NOTE TERMS ON REVERSE SIDE' and 'SUBJECT TO TERMS ON REVERSE SIDE PURSUANT TO ARTICLE 2, UNIFORM COMMERCIAL CODE/ACKNOWLEDGED AND ACCEPTED.'"  *Id.* ¶ 17.  The Licenses that Scholastic has, to date, located, contain this

same language indicating that they are subject to DRK's standard Terms.  *See* Rosenthal Decl., Ex. B.

### C.    The Clauses Cover the Present Dispute

There is also little dispute that the arbitration provisions cover the underlying claims, as Krasemann has already admitted as much in the *Wiley* Action.  There, Krasemann submitted his declaration in support of Plaintiff's motion, *inter alia*, to dismiss any "pre-June 18, 1997 copyright infringement claims" as "properly part of the arbitration proceeding DRK has filed in Arizona…"  Rosenthal Decl., Ex. D at 15.  DRK, represented by the same counsel that represents Plaintiffs here, argued that these provisions, which included the instruction that disputes "*shall* be arbitrated" were mandatory and binding on the parties and extended to copyright claims.  *Id.* at 13-14.

The court in the *Wiley* Action agreed, and granted DRK's motion.  *See* Rosenthal Decl., Ex. E.  And, it was not alone, as courts who have looked at this issue have routinely found that copyright claims are encompassed by similar arbitration provisions.  *See Cole v. Pearson Educ., Inc.*, No. 10 Civ. 7523, 2011 WL 4483760, at *6 (S.D.N.Y. Sept. 28, 2011) (arbitration provision instructing that "[a]ny dispute[s] in connection with the stock picture invoice including its validity, interpretation, performance, or breach shall be arbitrated" extended to copyright infringement claims); *Cole v. John Wiley & Sons, Inc*., No. 11 Civ. 2090 DF, 2012 WL 3133520, at *9-11 (S.D.N.Y. Aug. 1, 2012) (same); *Senisi v. John Wiley & Sons, Inc.*, No. 13 Civ. 3314, 2015 WL 256094, at *2 (S.D.N.Y. Jan. 21, 2015) (dismissing copyright claims in favor of arbitration where provision stated that "[c]lient [] and Photographer [] agree to submit all disputes hereunder to arbitration ... under the rules of the American Arbitration Association").  The same should result here for all Licensed Uses dated before June 18, 1997, which are identified in the Chart.  *See* Rosenthal Decl., Ex. A.

## II.   SIXTY SEVEN (67) LICENSED USES SOUND IN CONTRACT RATHER THAN COPYRIGHT

Plaintiffs bring only a claim for copyright infringement (Cplt. ¶¶ 32-34), but admit that the Licensed Uses identified in the Complaint were properly licensed by Scholastic.  *See id.* ¶ 15 ("After obtaining access [to the Photographs], Scholastic requested and secured limited use licenses from DRK Photo"); *id.*, Exs. A-D (identifying Licenses by invoice number and date). "A copyright owner who grants a nonexclusive, limited license ordinarily waives the right to sue licensees for copyright infringement, and it may sue only for breach of contract."  *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010), *as amended on denial of reh'g* (Feb. 17, 2011), *opinion amended and superseded on denial of reh'g*, No. 09-15932, 2011 WL 538748 (9th Cir. Feb. 17, 2011) (internal quotation omitted).

Even where a license has been breached, not all breaches of a license agreement amount to copyright infringement.  Rather, "if the [licensee's] improper conduct constitutes breach of a covenant undertaken by the [licensee] ... and if such covenant constitutes an enforceable contractual obligation[,] … then the [licensor] may have an action for breach of contract," not copyright infringement.  3 Nimmer on Copyright § 10.15[A], at 10-115.  "Conditions precedent are disfavored because they tend to work forfeitures…Wherever possible, equity construes ambiguous contract provisions as covenants rather than conditions."  *MDY Indus.,* 629 F.3d at 939.  As the Ninth Circuit has previously found, failure to pay royalties for use is a breach of a covenant and is not actionable as copyright infringement.  *Falcon Enters., Inc. v. Publishers Servs., Inc.*, 438 Fed. App'x 579, 581 (9th Cir. 2011); *see also Graham v. James*, 144 F.3d 229, 237 (2d Cir. 1998) (failure to pay royalties was condition rather than covenant).  In *Falcon,* the Ninth Circuit presumed the existence of an implied, ongoing, non-exclusive license based on the parties' prior licensing practice.  *Id.*  It further found that the publisher's failure to pay for publication of images pursuant to that license was merely a "covenant, rather than a condition precedent that would give rise to a copyright infringement lawsuit."  *Id.*

The same holds here for all Licensed Uses licensed on or after January 5, 2000, which are identified in the Chart.  *See* Rosenthal Decl., Ex. A.  The Terms that were in effect between January 5, 2000 and June 16, 2003 indicate that "[i]n the event of unauthorized use, it is agreed

that a retroactive license can be made available at a fee of ten (10) times the normal

reproduction charge." *See* Krasemann Declaration, Ex. 6 ¶ (f).  The current Terms, which have

been in effect from June 17, 2003 are even clearer, stating:

> In the event you use an image for any other use than that indicated on the invoice, including but not limited to the number of uses, the publication using, or the size of the reproduction, DRK PHOTO agrees to forego its rights to sue for copyright infringement and breach of contract if you pay, as liquidated damages, a sum equal to ten (10) times the maximum price we would have charged for such a use, within ten (10) days of us billing such fee.  This is not a penalty but an agreed fair use charge.  If you fail to make such payment within ten (10) days, we shall have the right to sue for copyright infringement and breach of contract.

Krasemann Declaration, Ex. 7.  Rather than view an excess of a particular License issued

pursuant to these Terms to be copyright infringement, the Terms grant a continuing license for

additional use in exchange for a set fee: ten times the usual licensed amount.  In the case of the

June 17, 2003 Terms, they go even further, specifically waiving the right to sue for infringement

in exchange for this payment.  If Plaintiffs have any complaint, it is for nonpayment of royalties

pursuant to these Terms (*i.e.*, nonpayment of the ten times license fee for an extended license),

which they have not alleged.[2]  Even had this occurred, it would be a breach of a covenant that

would not support a claim for copyright infringement.  *See Falcon*, 438 Fed. App'x at 581.  The

67 Licensed Uses underlying these Licenses and identified in the Chart (*see* Rosenthal Decl.,

Ex. A) should thus be dismissed.

## III.   PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

"Section 507(b) of the Copyright Act provides that copyright claims must be

'commenced within three years after the claim accrued.'  17 U.S.C. § 507(b)." *Wolf v. Travolta*,

No. CV14-938-CAS(VBKX), 2016 WL 3150552, at *7 (C.D. Cal. Feb. 4, 2016).  As noted

above, Plaintiffs' copyright infringement action is based on Licenses issued between 1993 and

2010.  Even at the time DRK first approached Scholastic to raise concerns about alleged license

excesses in December 2011, all but eight of the Licensed Uses (*see* Rosenthal Decl., Ex. A) had

---

[2] On December 30, 2018, counsel for Scholastic contacted Plaintiffs' counsel identifying this provision and requesting that DRK issue such an invoice for any instance where Plaintiffs believed a license had been exceeded.  Rosenthal Decl. ¶ 8.  As of the date of filing, Plaintiffs have not substantively responded to this request.  *Id.*  The parties had previously discussed this possibility in 2011/2012 with respect to a subset of the Licensed Uses that are identified in the Chart as subject to the Tolling Agreement, but no resolution was reached at that time.  *Id.*

1    been licensed and the licensed photographs published more than three years before.  *See*

2    *generally id.* (indicating license and publication dates).  Indeed, the first of the Licensed Uses

3    was then already more than 18 years old.  *See id.* Row 6.  These claims were already beyond the

4    statute of limitations.

5            Plaintiffs will undoubtedly attempt to save their claims by asserting that they only

6    recently "discovered" them pursuant to the Ninth Circuit's decision in *Polar Bear Prods., Inc. v.*

7    *Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004).  However, *Polar Bear* cannot save the

8    Complaint for two reasons.  *First*, the Supreme Court decision in *Petrella v. Metro-Goldwyn-*

9    *Mayer, Inc.*, 134 S. Ct. 1962 (2014) – which was decided later – casts doubt on the viability of

10   this "discovery rule."  *See Oracle USA, Inc. v. Rimini St., Inc.*, No. 2:10 Civ. 00106, 2015 WL

11   5089779, at *6 (D. Nev. Aug. 27, 2015) (noting the contrary suggestion in *Petrella*, but finding

12   that "the discovery rule is still controlling precedent" because "the Supreme Court in *Petrella*

13   expressly declined to reject the discovery rule"); *see also Lefkowitz v. John Wiley & Sons, Inc.*,

14   No. 13 Civ. 6414, 2014 WL 2619815, at *13 n.9 (S.D.N.Y. June 2, 2014) (recognizing that "the

15   *Petrella* Court issued certain statements that could be interpreted to cast doubt on those

16   decisions adopting the discovery rule," but following that rule).  Scholastic encourages this

17   Court to instead adopt the injury rule.  This rule makes better sense.  Copyright infringement is a

18   tort, and "the traditional rule is that 'the tort cause of action accrues and the statute of limitations

19   commences to run, when the wrongful act or omission results in damages.  The cause of action

20   accrues even though the full extent of the injury is not then known or predictable.'"  6 Patry on

21   Copyright § 20:17 (citing *Wallace v. Kato*, 549 U.S. 384, 391 (2007)).

22           *Second*, even if the discovery rule applies, this "discovery" must necessarily occur when

23   Plaintiffs have the information necessary to bring suit.  *See Wolf v. Travolta*, No. CV 14-00938-

24   CAS-PJW, 2016 WL 911469, at *9 (C.D. Cal. Mar. 4, 2016) (citing *Petrella*, 134 S.Ct. at 1969)

25   ("A claim 'ordinarily accrues when [a] plaintiff has a complete and present cause of action.'").

26   Plaintiffs' claims rely on the information that: (1) their agent licensed certain of their

27   photographs beginning in 1993 (Cplt. ¶ 15); and (2) Scholastic published them, typically in that

28   same year.  *See id.*, Exs. A-D (indicating publication dates).  Plaintiffs have no more

information now than they did when their photographs were published by Scholastic, and they could therefore have as easily commenced this suit at that time. Thus, Plaintiffs "discovered" their claims well beyond three years before filing, and it would be contrary to the purpose of the statute of limitations to allow Plaintiffs to sit on these claims indefinitely. *See John R. Sand & Gravel Co. v. U.S.*, 552 U.S. 130, 133 (2008) (the purpose of the statute of limitations is "primarily to protect defendants against stale or unduly delayed claims") (internal citation omitted).

This argument applies with even greater force to the Licensed Uses that were not tolled by the Tolling Agreement. *See* Rosenthal Decl., Ex. A (identifying same). As noted above, Krasemann, in his capacity as sole owner of Plaintiffs' agent, DRK, approached Scholastic regarding allegations of license excesses in late 2011. Rosenthal Decl. ¶ 5. Although Scholastic and DRK agreed to toll certain claims that were specifically identified at that time, this Tolling Agreement did "not apply to any claims by any other photographer or agency or to any uses not identified on the Spreadsheets." *Id*. ¶ 7, Ex. G. Thus, to the extent any of these Licensed Uses remained timely in 2011, they are not timely today.

Even under the discovery rule, "[a] cause of action for copyright infringement accrues when one has knowledge of a violation *or is chargeable with such knowledge*." *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994) (citing *Wood v. Santa Barbara Chambers of Commerce, Inc.*, 507 F. Supp. 1128, 1135 (D.Nev. 1980)) (emphasis added). DRK, as Plaintiffs' agent and through Krasemann, raised concerns about what it appeared to believe were widespread license excesses in 2011. Rosenthal Decl. ¶ 5. Yet, Plaintiffs did nothing to investigate, or to otherwise toll 58 of the Licensed Uses they now seek to bring in this action. Rosenthal Decl., Ex. A. These were "storm warnings" that Plaintiffs – in particular, Krasemann, who was involved in the actions in 2011 as sole owner of DRK – could not ignore. Should this Court find that Plaintiffs' claims were timely in 2011 – and it should not for the reasons indicated above – these claims should be dismissed as untimely today. *See Wolf,* 2016 WL 3150552, at *10 (granting summary judgment to defendant and dismissing copyright claims

where "the Court cannot conclude that plaintiffs both did not discovery and reasonably could not have discovered defendants' alleged infringement before November 2012").

## CONCLUSION

For each of the foregoing reasons, Scholastic respectfully requests that the Court grant its motion to dismiss the Complaint in its entirety, with prejudice.

## **LRCiv 12.1(c) Certification of Counsel**

Undersigned counsel certifies pursuant to LRCiv 12.1(c) that Scholastic's lead counsel notified counsel for Plaintiffs of the issues asserted in the motion and the parties were unable to agree that Plaintiffs would cure the deficiencies in their pleading or that the pleading was curable in any part by a permissible amendment offered by the pleading party.

DATED: January 7, 2019                    **BACAL & GARRISON LAW GROUP**


By:___/s/ Sean D. Garrison_____
Sean D. Garrison
6991 East Camelback, Ste. D-102
Scottsdale, Arizona 85251
Telephone: (480) 245-6230
Facsimile: (480) 245-6231
sean.garrison@bacalgroup.com

**FRANKFURT KURNIT KLEIN & SELZ, P.C.**
Edward H. Rosenthal*
Nicole Bergstrom*
488 Madison Avenue, 10th Floor
New York, New York 10022
Telephone:  (212) 980-0120
Facsimile:  (212) 593-9175
erosenthal@fkks.com
nbergstrom@fkks.com

 Azita Iskandar*
2029 Century Park East, Ste. 1060
Los Angeles, California 90067

Telephone:  (310) 579-9600
Facsimile:  (310) 579-9650
aiskandar@fkks.com
* *pro hac vice* motion forthcoming

*Attorneys for Defendant Scholastic Inc.*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on January 7, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Christopher Seidman (chris@harmonseidman.com)
HARMON SEIDMAN & BRUSS LLC
101 S. 3rd St., Ste. 265
Grand Junction, Colorado 81501

Amanda L. Bruss (amanda@harmonseidman.com)
HARMON SEIDMAN & BRUSS LLC
8010 E 29th Avenue
Denver, Colorado 80238

*Attorneys for Plaintiffs*


    /Sean D. Garrison/
Sean D. Garrison