Sean D. Garrison
BACAL & GARRISON LAW GROUP
6991 East Camelback, Ste. D-102
Scottsdale, Arizona 85251
Telephone: (480) 245-6230
Facsimile: (480) 245-6231
sean.garrison@bacalgroup.com

Edward H. Rosenthal
Nicole Bergstrom
FRANKFURT KURNIT KLEIN & SELZ, P.C.
488 Madison Avenue, 10th Floor
New York, New York 10022
Telephone: (212) 980-0120
Facsimile: (212) 593-9175
erosenthal@fkks.com
nbergstrom@fkks.com
admitted *pro hac vice*

Azita Iskandar
FRANKFURT KURNIT KLEIN & SELZ, P.C.
2029 Century Park East, Suite 1060
Los Angeles, CA  90067
Telephone: (310) 579-9600
Facsimile: (310) 579-9650
aiskandar@fkks.com
*pro hac vice* application pending

***Attorneys for Defendant Scholastic Inc.***

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA
### Prescott Division

| | |
|---|---|
| Stephen Krasemann, Darrell Gulin, Johnny Johnson, and Daniel R. Krasemann, individually and oh behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Scholastic, Inc.<br><br>Defendant. | Case No. 3:18-cv-08313-DWL<br><br>**DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |

**PRELIMINARY STATEMENT**

In its opening brief (Dkt No. 10, dated January 7, 2019 (the "Brief" or "Br."), Scholastic demonstrated that Plaintiffs'[1] asserted copyright claims against Scholastic are precluded for one or more of the following reasons: (1) many are subject to a binding arbitration agreement; (2) some sound in contract rather than copyright; and (3) nearly all of them are barred by the statute limitations.  In their opposition (Dkt No. 12, dated January 22, 2019 (the "Opposition" or "Opp. Br.")), Plaintiffs attempt to ignore the documents they identify – which were drafted by their agent – as well as their own lack of attention to any claims in order to avoid dismissal. Specifically, Plaintiffs go so far as to mischaracterize their claims as being based on *unlicensed* uses of their photographs despite the multiple invoices *they identify* in the Complaint (*see id.*, Ex. 1), and then try to wish away the Terms that accompanied these invoices that require dismissal of the vast majority of their claims either in favor of arbitration or as sounding in contract.  The Court should reject Plaintiffs' attempt to rewrite history, and dismiss all of Plaintiffs' claims on the bases identified in the Brief.

**ARGUMENT**

As indicated in the Brief, all Licensed Uses in the Complaint should be dismissed on three separate grounds; that they: (1) are subject to a binding arbitration provision; (2) sound in contract rather than copyright; and/or (3) run afoul of the of the statute limitations.

I. **PLAINTIFFS CANNOT IGNORE THE TERMS OF THE INVOICES DRAFTED BY THEIR AGENT**

Although they now argue otherwise, Plaintiffs admitted in the Complaint that the Licensed Uses were, at least initially, properly licensed by Scholastic.  *See id.* ¶ 15 ("After obtaining access [to the Photographs], Scholastic requested and secured limited use licenses from DRK Photo"); *id.*, Exs. A-D (identifying Licenses by invoice number and date). Krasemann has further affirmatively argued in a separate litigation that, based on the Terms of

---

[1] Unless otherwise indicated herein, defined terms retain the definitions given to them in the Brief.

these invoices, all Licensed Uses that were invoiced before June 18, 1997 are subject to a binding arbitration provision.  *See* Krasemann Declaration ¶ 16 Krasemann Declaration ¶ 16 and Exs. 2 ¶ (i) and 3 ¶ (k).  There can also be no dispute that all Licensed Uses invoiced after January 5, 2000, are subject to a contractual solution for uses outside of the invoice (*see id.*, Ex. 6 ¶ (f)) – and for those invoiced after June 17, 2003, affirmatively waive any claim Plaintiffs might have for copyright infringement.  *See id.*, Ex. 7.

    In their Opposition, Plaintiffs ignore both these invoices and their Terms, claiming instead that their copyright claims relate to "***unlicensed***" uses (Opp. at 1 (emphasis in original)) after the initial license was "exhausted".  *Id.* at 9.  Put another way, Plaintiffs argue that, upon the printing of a single copy outside of the licensed print run, the license disappears and its Terms are no longer applicable.  This argument – that in such a situation the license is "exhausted" – is without legal support.  Moreover, it makes little sense where the Terms Scholastic identifies (*i.e.,* an arbitration provision for breaches of the invoice and a 10x royalty for any uses outside of the licensed terms) necessarily anticipate use outside of the face of the invoice.

    In the clearest example, the version of the Terms that has been in effect since June 17, 2003 requires that "[i]n the event you use an image for any other use than that indicated on the invoice, including but not limited to the number of uses," Plaintiffs' agents will make available a new invoice at a ten (10) times fee.  Krasemann Declaration, Ex. 7.  This necessarily anticipates use outside of the license, and to suggest that the license to use the work somehow disappears at the printing of one additional copy would render it meaningless.  Such a reading would be inappropriate for either the arbitration or 10x royalty provisions.  *See Allen v. Honeywell Ret. Earnings Plan*, 382 F. Supp. 2d 1139, 1165 (D. Ariz. 2005) (declining to read a contract in a way that would render a term meaningless because that would be "a result contrary to the rule of contract interpretation that disfavors constructions that nullify a contract term or render a term superfluous or redundant"); *Chandler Med. Bldg. Partners v. Chandler Dental Grp.*, 175 Ariz. 273, 277 (Ariz. Ct. App. 1993) (under Arizona law, court will not read a

contract so as to render a provision meaningless).  Plaintiffs' argument should be rejected, and they should be held to the invoices and Terms drafted by their agent, DRK.

### A. The Terms Governing 54 Licensed Uses Contain a Binding Arbitration Clause

As Scholastic noted in its Brief, Krasemann previously argued in DRK's action against Wiley (*John Wiley & Sons, Inc. v. DRK Photo*, 11 Civ. 05454 (S.D.N.Y.) (the "*Wiley* Action")), that the arbitration provisions in the DRK Terms required arbitration of copyright claims. *Id.* at 6.  Plaintiffs now seek to ignore both the provision and this history by arguing, without support, that the phrase "regarding" as used in the provision should be read narrowly to exclude copyright claims.  Opp. at 2-4.

In doing so, Plaintiffs do not cite case law that analyzes the phrase "regarding", but instead claim, without any support, that "regarding" is more similar to "arising hereunder" – which is read narrowly by courts to require arbitration only in limited situations – than "in connection with" – which requires arbitration of all claims broadly.  Opp. at 3-4.  It is perhaps telling that Plaintiffs do not cite a single case that directly supports this reading.  That is likely because the case law in this Circuit is to the contrary.  "Regarding" in arbitration clauses has been read broadly. *See Int'l All. of Theatrical Stage Employee & Moving Picture Technicians Artists, & Allied Crafts of the United States, It's Trusteed Local 720 Las Vegas, Nevada v. InSync Show Prods., Inc.,* 801 F.3d 1033, 1043 (9th Cir. 2015) (noting that arbitration provision indicating that "any differences that may arise *regarding* the meaning and enforcement of this Agreement" was a "broad arbitration clause") (emphasis added); *Daugherty v. Experian Info. Sols., Inc.*, 847 F. Supp. 2d 1189, 1194 n.2 (N.D. Cal. 2012) (reading arbitration provision extending to "[a]ll Claims relating to" and "regarding the application, enforceability, or interpretation of this Agreement" to be broad*); Reid v. Optumhealth Care Sols., Inc.*, No. 3:12-CV-00747-ST, 2012 WL 6738542, at *7 (D. Or. Oct. 11, 2012), *report and recommendation adopted*, No. 3:12-CV-00747-ST, 2012 WL 6738515 (D. Or. Dec. 28, 2012) (finding arbitration provision encompassing claims "regarding or relating to" subject matter to be "broad in scope"); *see also Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 194

3
DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

(1991) (arbitration provision indicating that "[d]ifferences that may arise between the parties hereto regarding this Agreement and any alleged violations of the Agreement" found to be "a broad arbitration provision"). Indeed, "regarding" is far more similar to "relating to" as used in arbitration agreements, which has also been read broadly, and, as courts in this Circuit have found, "[l]anguage such as 'relating to' indicates an arbitration clause considerably broader in reach than one limited to disputes 'arising out of' certain dealings." *ConWest Res., Inc. v. Playtime Novelties, Inc.,* No. C 06-5304SBA, 2007 WL 1288349, at *3 (N.D. Cal. May 1, 2007) (citing *Tracer Research Corp. v. Nat'l Envt'l Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994)). Courts have thus regularly found that arbitration provisions that use the phrase "relating to" extend to copyright infringement claims. *See Valueselling Assocs., LLC v. Temple*, 520 F. App'x 593, 594 (9th Cir. 2013) (finding arbitration provision requiring arbitration of "[a]ny dispute, controversy, or question arising under, out of or relating to" the agreement properly extended to copyright infringement claim); *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1285-86 (9th Cir. 2009) (arbitration clause that provided that "[a]ll disputes relating to or arising under this Agreement ... shall be resolved by arbitration" applied to "all disputes, equitable and legal," including trademark disputes) *cert. denied* 558 U.S. 824 (2009); *BioD, LLC v. Amnio Tech., LLC*, No. 2:13-CV-1670, 2014 WL 268575, at *5 (D. Ariz. Jan. 24, 2014) ("arising out of or relating to this Agreement" extended to copyright claims). And, of course, the court in the *Wiley Action* found that wording of *these very provisions* required arbitration of copyright claims. *See* Rosenthal Decl., Ex. E. The result should be the same here.

In any case, while Plaintiffs argue that this Court must consider whether the arbitration agreement encompasses the dispute at issue (Opp. at 2) and that their claims deal with issues outside the invoices (*id.* at 4-5), this is contrary to Supreme Court precedent decided earlier this month (but *before* Plaintiffs filed their Opposition). *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, No. 17-1272, 2019 WL 122164, at *4 (U.S. Jan. 8, 2019) ("a court may not decide an arbitrability question that the parties have delegated to an arbitrator"). Even before *Archer*, the Ninth Circuit had, albeit in non-copyright infringement cases, found that arbitration provisions that, like the ones here, included the language "regarding…the interpretation" of

1  agreements to require that the arbitrator – and not the court – determine arbitrability.  *See*
2  *Pacesetter Const. Co. v. Carpenters 46 N. Cal. Ctys. Conference Bd.*, 116 F.3d 436, 439 (9th
3  Cir. 1997) ("In *Desert Palace*, we held that a common 'broad arbitration clause' providing for
4  arbitration of 'all disputes regarding the interpretation or application' of a collective bargaining
5  agreement represented an agreement to permit the arbitrator to decide arbitrability."). The
6  Licensed Uses identified in the Chart as being "Subject to Arbitration Provision" should be
7  dismissed and sent to arbitration.

   **B.    The Arbitration Provisions Cover *all* Plaintiffs**

   In addition, while Plaintiffs now appear to give up their argument that *Krasemann's*
   *claims* may be brought in this Court in light of his declaration to the contrary, they argue that the
   remaining Plaintiffs should not be bound by these provisions.  *See* Opp. at 5-6 (limiting
   arguments to Stephen Krasemann, Darrell Gulin and Johnny Johnson).  Plaintiffs' argument
   relies on the fallacy that "[w]hile the Complaint alleges that DRK was authorized to issue
   limited licenses for use of the Photographers' work, nothing in the Complaint indicates that a
   fiduciary relationship existed between DRK and the Photographers, or that the Photographers
   had any control over DRK's conduct…" *Id*.  This is not the case.

   By Plaintiffs' admissions, they entered into "representation agreements" with DRK by
   which DRK licensed photographs, including to Scholastic, on their behalf.  Cplt. ¶ 13.  When
   DRK made a sale, Plaintiffs received "a percentage of the fees [DRK] negotiated." *Id*.  DRK
   then later approached Scholastic, purportedly on Plaintiffs' behalf, regarding many of the
   Licensed Uses and entered into a tolling agreement on their behalf.  Rosenthal Decl. ¶¶ 5-6, Exs.
   F, G.  DRK was thus Plaintiffs' licensing agent and acting on Plaintiffs' behalf when it issued
   invoices to Scholastic, which contained the arbitration provisions.  *See Naria v. Trover Sols.,*
   *Inc.*, 967 F. Supp. 2d 1332, 1339 (N.D. Cal. 2013) (nonsignatory bound by arbitration provision
   due to prior agency relationship with signatory).  Alternatively, at the very least, Plaintiffs were
   intended beneficiaries of these invoices – having received a percentage of the fees (Cplt. ¶ 13) –
   and thus must be bound to their terms.  *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir.
   2006) ("[N]onsignatories have been held to arbitration clauses where the nonsignatory

5
DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS'
COMPLAINT

knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.") (internal quotation omitted; emphasis omitted).[2]  The Licensed Uses identified in the Chart as being "Subject to Arbitration Provision" should be sent to arbitration.

### C. Plaintiffs Cannot Escape the 10x Provision in the Terms

Plaintiffs further argue that their claims sound in copyright rather than contract (Opp. at 6-12), again ignoring the fact that the contracts provide a solution for any situation where the license is exceeded – and, in some cases, specifically waive any right to sue for copyright infringement.  *See* Krasemann Declaration, Exs. 6 ¶ (f), 7.  As with their failure to abide by the arbitration provisions, Plaintiffs' argument seeks to ignore the Terms of the invoices, apparently in hopes of cashing in on increased damages for copyright claims.  *See* Cplt. at 8 (seeking statutory damages).

Plaintiffs first attempt to distance themselves from the underlying invoices, claiming that Scholastic is not supported by *MDY Indus., LLC v. Blizzard Enm't, Inc.*, 629 F.3d 928 (9th Cir. 2010) (previously cited by Scholastic in its Brief at 7), because a plaintiff "*can* sue a licensee for infringement where the licensee's use '(1) exceeds the license's scope (2) in a manner that exceeds one of the licensor's exclusive statutory rights.'"  Opp. at 7 (quoting *MDY*, 629 F.3d at 940) (emphasis in original)).  But, it is *Plaintiffs* who misread *MDY* and ignore the fact that the first element they recite is *not* satisfied here.  The Terms of the invoices create an ongoing license for uses that exceed the terms on their face, in exchange for a 10x fee, thus the scope of the license was not exceeded.  *See* Krasemann Declaration, Exs. 6(f), 7.  As noted above, while Plaintiffs attempt to avoid this provision by claiming that the invoices were "exhaust[ed]" (Opp. at 7-10), this reading is contrary to the face of the Terms, which, in contrast to the cases relied

---

[2] Plaintiffs finally claim that, to the extent certain of the Licensed Uses are dismissed in favor of arbitration, they should be stayed while the claims in this forum proceed.  Opp. at 6.  Plaintiffs provide no support for this request, and it would be difficult to see why this would be appropriate when, as Scholastic noted in its Brief (*id.* at 1), more than seventy percent (70%) of Plaintiffs' claims should be dismissed on the basis of provisions in the Terms.

upon by Plaintiffs (*id.*), necessarily anticipates use outside of the face of the invoice and provides a contractual solution.

Plaintiffs further cite to *Spinelli v. Nat'l Football League*, 903 F.3d 185 (2d Cir. 2018) in support of their argument that Scholastic's use of their photographs amounted to copyright infringement rather than a breach of contract – although they have yet to articulate any breach. Opp. at 7. They fault Scholastic for "misleadingly cit[ing] to *Graham*" and "fail[ing] to bring to this Court's attention the Second Circuit's later ruling in *Spinelli*." *Id.* at 10. In actuality it is Plaintiffs who misread *Spinelli*, as they did *MDY*. Plaintiffs acknowledge that both *Falcon* and *Graham* (previously cited by Scholastic in its Brief at 7) confirm that failure to pay royalties is merely a breach of contract claim. Opp. at 10. What Plaintiffs ignore is that *Spinelli* squares with both *Falcon* and *Graham* on this front, confirming that failure to pay royalties is "typically, a claim sounding in contract." *Spinelli*, 903 F.3d at 202. Again, as Scholastic noted in its Brief (*id.* at 8), this is precisely the claim that Plaintiffs attempt to bring: "[i]f Plaintiffs have any complaint, it is for nonpayment of royalties pursuant to these Terms." *Id.* Under *Graham*, *Falcon* and *Spinelli*, that claim sounds in contract rather than copyright.

Finally, Plaintiffs argue that this 10x provision should be ignored because "there is no evidence in the Complaint that Scholastic ever requested or paid for any such license" (Opp. at 11), but there is no dispute that Scholastic *did* request that Plaintiffs provide an invoice for this 10x fee, in accordance with the Terms, and Plaintiffs failed to respond. Rosenthal Decl. ¶ 8 n.2. This is largely immaterial, however, because, even assuming Scholastic did not pay the fee, all Plaintiffs are left with is a claim for breach of contract.

## II. PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

In its Brief, Scholastic also demonstrated that Plaintiffs' claims are barred by the statute of limitations – under either the injury rule, which Scholastic urges this Court to adopt – or the discovery rule. Br. at 8-11. Plaintiffs make a series of arguments in an attempt to avoid dismissal, none of which have merit.

*First*, in its Brief, Scholastic encouraged this Court to adopt the injury rule, given the Supreme Court's ruling in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014). Br. at

9. Plaintiffs attempt to respond to this argument by claiming that "[t]he Ninth Circuit, however, thinks otherwise," citing *Polar Bear Prods., Inc. v. Timex*, 384 F.3d 700, 706-7 (9th Cir. 2004). Br. at 12. But, as Scholastic noted in its Brief, *Polar Bear* was decided *ten years* before *Petrella*, and thus did not have the benefit of its guidance. Br. at 9.

*Second*, Plaintiffs argue that their claims are not barred because "Scholastic has not cited any allegation in the Complaint indicating when its infringement of each of the Photographs in suit began or ended." Opp. at 14. This asks the wrong question. The appropriate question is when Plaintiffs had enough information to "file suit and obtain relief." *Petrella*, 572 U.S. at 670. Plaintiffs did not bring this action because they had knowledge of any infringement. Rather, as Scholastic noted in its Brief, Plaintiffs based their Complaint solely on the information that: (1) their agent licensed certain of their photographs beginning in 1993 (Cplt. ¶ 15); and (2) Scholastic published them, typically in that same year. *See id.*, Exs. A-D (indicating publication dates). This information was "discovered" by Plaintiffs at, or shortly after, each Licensed Use was invoiced. Plaintiffs should not be allowed to sit on this information indefinitely by claiming ignorance and then seek full damages for claims that are, in some cases, more than twenty-five years old. *See John R. Sand & Gravel Co. v. U.S.*, 552 U.S. 130, 133 (2008) (the purpose of the statute of limitations is "primarily to protect defendants against stale or unduly delayed claims") (internal citation omitted).

*Finally*, Plaintiffs complain that Scholastic seeks to rely on information outside of the Complaint on this motion. Opp. at 15-17. But, the information outlined above, which makes clear that Plaintiffs' claims are untimely, appears entirely on the face of the Complaint and in its Exhibits.[3] *See* Cplt., Exs. A-D (indicating invoice and, in most cases, publication dates for the Licensed Uses). These disputed exhibits, however, are merely the Tolling Agreement between

---

[3] It also requires no discovery, which is requested in the alternative by Plaintiffs. *See* Opp. at 17. Nor is there any merit to Plaintiffs' argument that "[t]he interest of judicial efficiency would be better served" in allowing discovery because Scholastic's argument applies to fewer than all Licensed Uses. *Id.* Scholastic's statute of limitations argument applies to *158 of 166* Licensed Uses, over 95%, and all of its arguments in combination apply to every one of the Licensed Uses. *See* Rosenthal Decl., Ex. A.

8
DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Scholastic and DRK.  Plaintiffs do not question the authenticity of the agreement, and the Complaint references that DRK "inquired about Scholastic's actual use of Photo-supplied images" (Cplt. ¶ 31(c)) in 2011 (*compare id.* (claiming Scholastic ceased licensing from DRK after this inquiry) *with id.* ¶ 14 (claiming this licensing ceased in 2011)) – the very conversation that led to the Tolling Agreement.  Rosenthal Decl. ¶ 5.  In these circumstances, courts in this Circuit regularly take judicial notice of tolling agreements between the parties on 12(b)(6) motions without converting the motion.  *See Hexcel Corp. v. Ineos Polymers, Inc.*, No. 2:09 Civ. 05334, 2010 WL 11520539, at *3 (C.D. Cal. Feb. 23, 2010) (taking judicial notice of tolling agreement on 12(b)(6) motion involving statute of limitations); *Cytec Engineered Materials Inc. v. Toho Tenax Co.*, No. 8:10 Civ. 00163, 2010 WL 11595809, at *4 (C.D. Cal. Aug. 9, 2010) (same).  Plaintiffs' arguments are little more than further attempts to claim ignorance in hopes of statutory damages, and they should be rejected.

# CONCLUSION

For each of the foregoing reasons and the reasons stated in its opening papers, Scholastic respectfully requests that the Court grant its motion to dismiss the Complaint in its entirety, with prejudice.

DATED: January 29, 2019

**BACAL & GARRISON LAW GROUP**

By: */s/ Sean D. Garrison*
Sean D. Garrison
6991 East Camelback, Ste. D-102
Scottsdale, Arizona 85251
Telephone: (480) 245-6230
Facsimile: (480) 245-6231
sean.garrison@bacalgroup.com

**FRANKFURT KURNIT KLEIN & SELZ, P.C.**
Edward H. Rosenthal
Nicole Bergstrom
488 Madison Avenue, 10th Floor
New York, New York 10022
Telephone: (212) 980-0120
Facsimile: (212) 593-9175
erosenthal@fkks.com
nbergstrom@fkks.com
admitted *pro hac vice*

Azita Iskandar
2029 Century Park East, Ste. 1060
Los Angeles, California 90067
Telephone: (310) 579-9600
Facsimile: (310) 579-9650
aiskandar@fkks.com
*pro hac vice* application pending

*Attorneys for Defendant Scholastic Inc.*

CERTIFICATE OF FILING AND SERVICE

I hereby certify that on January 29, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Christopher Seidman (chris@harmonseidman.com)
HARMON SEIDMAN & BRUSS LLC
101 S. 3rd St., Ste. 265
Grand Junction, Colorado 81501

Amanda L. Bruss (amanda@harmonseidman.com)
HARMON SEIDMAN & BRUSS LLC
8010 E 29th Avenue
Denver, Colorado 80238

*Attorneys for Plaintiffs*


　　/Sean D. Garrison/
Sean D. Garrison