**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Stephen Krasemann, et al., | No. CV-18-08313-PCT-DWL |
| Plaintiffs, | **ORDER** |
| v. |  |
| Scholastic Incorporated, |  |
| Defendant. |  |

Pending before the Court is Defendant Scholastic Incorporated's ("Scholastic") motion to dismiss. (Doc. 10.) For the following reasons, the Court denies the motion.[1]

**BACKGROUND**

Plaintiffs Stephen Krasemann, Darrell Gulin, Johnny Johnson, and Daniel R. Krasemann ("Plaintiffs"), on behalf of themselves and others similarly situated, bring this copyright infringement action against Scholastic for the unlicensed use of their photographs. The facts alleged by Plaintiffs in the complaint (Doc. 1), taken as true for the purpose of ruling on Scholastic's motion to dismiss, are as follows.

Plaintiffs own copyrights in various photographs. (*Id.* ¶ 12.) Plaintiffs entered into "representation agreements" with DRK Photo—a stock photo agency—granting DRK Photo the right to license their photographs to third parties in exchange for a percentage of

---
[1] Plaintiffs requested oral argument (Doc. 14), but the Court will deny the request because the issues have been fully briefed and oral argument will not aid the Court's decision. See Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

the fees they negotiated. (*Id.* ¶¶ 2, 13.)

Between 1993 and 2011, DRK Photo provided Scholastic—the world's largest publisher and distributor of children's books—with Plaintiffs' photographs "for the limited purpose of enabling Scholastic to select specific images for subsequent licensing requests." (*Id.* ¶¶ 11, 14.) DRK Photo expressly prohibited Scholastic from using the photographs "until submission of and payment of an invoice" indicating that Scholastic was authorized to use the photographs. (*Id.* ¶ 14.)

Scholastic requested and secured limited-use licenses for 166 photographs belonging to Plaintiffs. (*Id.* ¶ 15.) Each license was expressly limited by "publication, number of copies, distribution area, image size, language, duration and/or media (print or electronic)." (*Id.* ¶ 18.)

Shortly after obtaining licenses for Plaintiffs' photographs, Scholastic: (1) printed or distributed the photographs without permission after the licenses obtained from DRK Photo were exhausted; (2) distributed the photographs in geographic locations not covered by the licenses; (3) published the photographs in electronic, ancillary, or derivative products not covered by the licenses; (4) printed and distributed the photographs in unlicensed international editions and foreign language products; and (5) printed and/or distributed the photographs after expiration of temporal limits in the licenses obtained from DRK Photo. (*Id.* ¶ 16.)

**DISCUSSION**

Scholastic moves to dismiss the complaint for three reasons. Each reason applies to a subset of the photographs at issue in this case, but not to each photograph. Specifically, Scholastic argues that: (1) the claims concerning 54 of the photographs are subject to arbitration agreements; (2) the claims concerning 67 of the photographs must be asserted as breach-of-contract claims, not copyright infringement claims; and (3) any claims concerning the remaining photographs are barred by the statute of limitations. (Doc. 10.)[2]

---

[2] Scholastic grouped the photographs into these categories by relying on spreadsheets attached to Plaintiffs' complaint. (*See* Docs. 1-2 to 1-5.) Those spreadsheets identify each photograph at issue in this case and provide, for each photograph, the "Image ID and description," "the Scholastic publication in which each Photograph was copied and

- 2 -

I.  Legal Standard

"[T]o survive a motion to dismiss, a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (citation omitted). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 679-80. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

II.  Analysis

A.  **Arbitration**

Scholastic argues that the disputes regarding 54 of the photographs (those for which licenses were issued before June 18, 1997) are subject to arbitration agreements, so the Court must dismiss the claims related to those photographs. (Doc. 10 at 4-6.)

1.  Scope of Review

Scholastic has moved under Rule 12(b)(6) to *dismiss* the disputes regarding the photographs it claims are subject to arbitration agreements, rather than moving to *compel* arbitration.[3] This approach is unusual because "[t]he question of arbitrability usually arises

---

subsequently infringed," "the Scholastic imprint that originally obtained the Photograph from DRK," and "the date and uses permitted in Scholastic's original license." (Doc. 1 ¶ 15.)

[3]  Specifically, Scholastic's motion asks the Court "to dismiss, with Prejudice, the Complaint filed by Plaintiffs" in part because "many" of "Plaintiffs' asserted copyright claims . . . are subject to a binding arbitration agreement." (Doc. 10 at 1.) Although the motion also contains a passing suggestion that the "54 Challenged Uses should be dismissed in favor of arbitration" (*id.* at 5), and the reply asserts that "[t]he Licensed Uses identified in the Chart as being 'Subject to Arbitration Provision' should be dismissed and sent to arbitration" (Doc. 13 at 5), the motion doesn't actually ask the Court to order Plaintiffs to engage in arbitration. Thus, the Court construes it as a motion to dismiss, not to compel arbitration.

- 3 -

in the context of a motion to compel arbitration." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). *See also Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013) ("The issue typically arises when one of the parties files a motion to compel arbitration.").

This approach also raises questions concerning what evidence the Court may consider when ruling on Scholastic's motion. When considering a motion to compel arbitration, district courts are permitted to consider evidence outside the pleadings. *Regents of Univ. of California v. Japan Sci. & Tech. Agency*, 2014 WL 12690187, *3 n.24 (C.D. Cal. 2014) ("Although the court normally cannot consider matters outside the pleadings in deciding a Rule 12(b)(6) motion to dismiss . . . it may consider such evidence in deciding a motion to compel arbitration."); *Breckenridge Edison Dev., L.C. v. Sheraton Operating Corp.*, 2014 WL 4892885, *1 n.2 (S.D.N.Y. 2014) ("Courts may consider documents outside the pleadings when deciding a motion to compel arbitration."). In contrast, when considering a motion to dismiss under Rule 12(b)(6), district courts normally can't consider matters outside the pleadings without converting the motion into a motion for summary judgment.

Here, neither party has addressed which standard should apply. The Court also hasn't identified any Ninth Circuit case law addressing this issue. Thus, the Court will follow the approach established by the Second Circuit in *Nicosia*. There, the defendant "did not move to compel arbitration and instead moved pursuant to Rule 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief may be granted, relying on the arbitration provision in [underlying contract]." 834 F.3d at 229-30. The Second Circuit explained that, because the "motion to dismiss neither sought an order compelling arbitration nor indicated that [the defendant] would seek to force [the plaintiff] to arbitrate in the future, it was proper not to construe the motion to dismiss as a motion to compel arbitration, to which the summary judgment standard would apply." *Id.* at 230. The Second Circuit further concluded that, because the district court had relied on extrinsic evidence when determining that the arbitration provision was valid—reliance that was

improper under the Rule 12(b)(6) standard—the district court's order granting the motion to dismiss had to be vacated. *Id.* at 234-235.

The same logic applies here. Thus, the Court will apply a 12(b)(6) standard to Scholastic's motion. *See also Bombardier Corp. v. Nat'l R.R. Passenger Corp.*, 333 F.3d 250, 254 (D.C. Cir. 2003) ("Amtrak sought an outright dismissal under 12(b)(6) on the grounds that [plaintiff] failed to comply with the dispute resolution procedures . . . . [I]mportantly, unlike a motion to compel or stay under the FAA, Amtrak's motion exhibited no intent to pursue arbitration—indeed, it sought outright dismissal with no guarantee of future arbitration. Therefore, we decline to 'treat' Amtrak's motion as anything other than what it was—a motion for dismissal under 12(b)(6)."); *Youngevity Int'l Corp. v. Smith*, 2017 WL 6397559, *1 (S.D. Cal. 2017) (refusing to construe opposition to motion to amend complaint as a motion to compel arbitration because the opposing party hadn't requested that the Court "direct such arbitration in the manner provided for in such agreement").

2. Extrinsic Evidence

Although the Court is applying a 12(b)(6) standard, it still may consider the extrinsic evidence proffered by Scholastic if the complaint "necessarily relies" on that evidence. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A complaint "necessarily relies" on evidence if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Id.* (citation omitted).

The arbitration clauses that form the basis for Scholastic's first argument are extrinsic evidence because they aren't quoted in the complaint or attached to the complaint. Nevertheless, the arbitration clauses (which are contained in two invoices that Scholastic attached to its motion to dismiss) meet the criteria set out in *Marder*. First, the complaint refers to the invoices. (Doc. 1 ¶ 14 ["When [DRK Photo] provided slides and digital files to Scholastic, DRK Photo expressly prohibited use of the images 'until submission of and payment of an invoice indicating [Scholastic]'s right to do the same.'"]); *id.* ¶ 15

["Scholastic requested and secured limited use licenses from DRK Photo."]).[4] Second, the invoices are central to Plaintiffs' claims. Plaintiffs' theory is that Scholastic engaged in the "unlicensed use of the Photographs after the limited licenses DRK Photo issued were used up." (*Id.* ¶ 17.) Thus, the scope of the licenses (and the terms and conditions related to the use of the photographs) are at the heart of Plaintiffs' lawsuit. Third, neither party questions the authenticity of the invoices. Scholastic proffered the invoices, and Plaintiffs don't dispute that the terms and conditions contained in the invoices are representative of the standard terms and conditions used by DRK Photo for the relevant time periods (before July 10, 1995 for the first invoice and between July 10, 1995 and June 17, 1997 for the second invoice). (Doc. 12 at 8 ["Plaintiffs do not dispute that DRK's Terms and Conditions ("T&Cs") above exist."].) Therefore, the Court may consider the arbitration clauses contained in the invoices without converting Scholastic's motion to dismiss into a motion for summary judgment.

### 3. Applicability Of The Arbitration Clauses

In Scholastic's motion to dismiss, it invokes the Federal Arbitration Act ("FAA"). Under the FAA, the Court must determine: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Scholastic argues Plaintiffs Stephen Krasemann, Darrell Gulin, and Johnny Johnson ("Photographer Plaintiffs")[5] are required to arbitrate because DRK Photo acted as their agent when it licensed the photographs to Scholastic, or alternatively, because Photographer Plaintiffs were intended beneficiaries of the agreements. (Doc. 13 at 6-7.) In response, Photographer Plaintiffs dispute whether they are bound by the DRK Photo-Scholastic agreements and whether those agreements' arbitration provisions encompass this dispute. (Doc. 12 at 8-12.)

---

[4] The licenses granted to Scholastic were contained in the invoices sent by DRK Photo. (*See* Doc. 1 ¶ 14.)

[5] Photographer Plaintiffs are differentiated from Plaintiff Daniel R. Krasemann, who doesn't own copyrights for any photographs licensed before June 18, 1997. (See Doc. 1-5.)

As discussed below, the Court cannot conclude, at this stage of the litigation and when applying a Rule 12(b)(6) standard, that Photographer Plaintiffs are required to arbitrate their disputes against Scholastic.

### a. Agency Relationship

"[G]enerally only signatories to an arbitration agreement are obligated to submit to binding arbitration . . . ." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). However, "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citation omitted). These principles include "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, [and] waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (citation omitted).[6]

Scholastic argues an agency relationship exists between Photographer Plaintiffs and DRK Photo because Photographer Plaintiffs "entered into 'representation agreements' with DRK by which DRK licensed photographs, including to Scholastic, on their behalf." (Doc. 13 at 6, citing Doc. 1 ¶ 13.) Further, "[w]hen DRK made a sale, Plaintiffs received 'a percentage of the fees [DRK Photo] negotiated.'" (*Id.*)[7]

Although these facts tend to suggest an agency relationship existed, they don't establish such a relationship as a matter of law. "[C]ourts in this circuit have routinely recognized that whether an agency relationship exists 'generally is a question of fact . . . [that is] better suited to a motion for summary judgment than a motion to dismiss.'" *Shuckett v. DialAmerica Mktg. Inc.*, 2019 WL 913174, *3 (S.D. Cal. 2019) (citation omitted). *See also Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 161 P.3d 1253, 1259 (Ariz.

---

[6] The Court looks to "[t]raditional principles of state law" to determine whether "a contract [may] be enforced by or against nonparties to the contract." *Arthur Andersen*, 556 U.S. at 631 (internal quotation marks omitted).

[7] Scholastic also argues that "DRK then later approached Scholastic, purportedly on Plaintiffs' behalf, regarding many of the Licensed Uses and entered into a tolling agreement on their behalf." (Doc. 13 at 6.) In support of this claim, Scholastic cites an affidavit created by its attorney. Because the affidavit is extrinsic to the complaint, and Plaintiffs didn't "necessarily rely" on it, the Court can't consider it at the motion-to-dismiss stage. *Marder*, 450 F.3d at 448.

Ct. App. 2007) ("Generally, '[t]he question of whether an agency existed is one of fact.'") (citation omitted). Moreover, a key factor in determining whether an agency relationship exists is whether the principal has the right to control the conduct of the agent. *See, e.g., Bultemeyer v. Sys. & Servs. Techs., Inc.*, 2012 WL 4458138, *6 (D. Ariz. 2012) ("Agency 'results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'") (quoting Restatement (First) of Agency § 1933); *Nava v. Truly Nolen Exterminating of Houston, Inc.*, 683 P.2d 296, 299 (Ariz. Ct. App. 1984) ("Reservation by the asserted 'principal' of the right to control the transaction is essential to the existence of an agency relationship."). *See also Urias v. PCS Health Sys., Inc.*, 118 P.3d 29, 36 (Ariz. Ct. App. 2005) ("We must consider whether [the purported principal] had the right to control the manner in which [the purported agent] negotiated and collected the rebates.") (citation omitted). The complaint, however, doesn't contain any allegations concerning the degree of control (if any) that Photographer Plaintiffs exerted over DRK Photo pursuant to the representation agreements. Thus, the mere fact that Photographer Plaintiffs entered into such agreements with DRK Photo isn't enough to conclusively establish that DRK Photo acted as their agent. *Bultemeyer*, 2012 WL 4458138 at *6 ("[T]here is not necessarily an agency relationship because . . . there is . . . [a] contract that the relationship shall exist . . . .").

### b. Third-Party Beneficiary

Scholastic also argues Photographer Plaintiffs are required to arbitrate because they were intended beneficiaries of the agreements between DRK Photo and Scholastic. By receiving a percentage of the fees from the invoices, Scholastic argues, Photographer Plaintiffs "must be bound to [the agreements'] terms." (Doc. 13 at 6.)

"Under the third-party beneficiary exception, a non-signatory party may be barred from avoiding arbitration if he has received a direct benefit from the arbitration agreement." *Austin v. Austin*, 348 P.3d 897, 905 (Ariz. Ct. App. 2015) (citation omitted). "In evaluating whether the third-party beneficiary theory applies to a particular arbitration agreement, 'a court must look to the intentions of the parties at the time the contract was

executed.'" *Id.* The parties must intend "to directly benefit that person and must indicate that intention in the contract itself." *Sherman v. First Am. Title Ins. Co.*, 38 P.3d 1229, 1232 (Ariz. Ct. App. 2002).

Scholastic's intended-beneficiary argument fails at this early stage of the proceedings. The complaint doesn't contain any allegations concerning the intent of the Photographer Plaintiffs at the time they entered into the representation agreements with DRK Photo. Nor do the invoices that Scholastic attached to its motion to dismiss. As noted, intent is the key issue on which the intended-beneficiary analysis turns. Thus, Scholastic can't prevail on its argument at the motion-to-dismiss stage. Although Photographer Plaintiffs may have received a percentage of the fees from each agreement, this doesn't necessarily make them third-party beneficiaries. *Sherman*, 38 P.3d at 1232 (finding that "it is not enough that the contract may operate to his benefit but it must appear that the parties intended to recognize him as the *primary* party in interest and as privy to the promise," for the third-party to be considered a third-party beneficiary) (citations omitted).

B. **Contract v. Copyright**

Scholastic argues the copyright infringement claims for 67 photographs licensed on or after January 5, 2000 must be dismissed because these claims "sound in contract rather than copyright." (Doc. 10 at 11.) According to Scholastic, this is because the licenses for those photographs contain "a continuing license for additional use in exchange for a set fee: ten times the usual licensed amount." (*Id.* at 12.)

Scholastic relies upon two contractual provisions for this argument.[8] The first is for licenses issued between January 5, 2000 and June 16, 2003. That provision, in relevant part, provides: "Use beyond the scope of this license constitutes willful copyright infringement. In the event of unauthorized use, it is agreed that a retroactive license can

---

[8] These provisions, like the arbitration clauses for the 54 photographs licensed before June 18, 1997, are not quoted in or attached to the complaint. Nevertheless, for the same reason the Court considered the arbitration clauses—Plaintiffs necessarily rely upon the documents—the Court may consider these provisions without converting the motion to dismiss into a motion for summary judgment. *Marder*, 450 F.3d at 448.

- 9 -

be made available at a fee of ten (10) times the normal reproduction charge." (Doc. 10-4 at Ex. 6 at 23.) The second provision, used for licenses issued from June 17, 2003 to the present, states:

> In the event you use an image for any other use than that indicated on the invoice, including but not limited to the number of uses, the publication using, or the size of the reproduction, DRK PHOTO agrees to forego its rights to sue for copyright infringement and breach of contract if you pay, as liquidated damages, a sum equal to ten (10) times the maximum price we would have charged for such a use, within ten (10) days of us billing such fee. This is not a penalty but an agreed fair use charge. If you fail to make such payment within ten (10) days, we shall have the right to sue for copyright infringement and breach of contract.

(Doc. 10-4 at Ex. 7 at 25.) Scholastic argues the language in these provisions "create[s] an ongoing license for uses that exceed the terms on their face, in exchange for a 10x fee." (Doc. 13 at 7.) Thus, Scholastic contends, "the scope of the license was not exceeded." (*Id.*)

These arguments are unavailing, at least at the motion-to-dismiss stage. Both provisions merely provide an alternative way, other than a copyright-infringement lawsuit, to recover if photographs were used beyond the scope of the licenses. That alternative—payment of ten times the normal or maximum fee—is triggered only if certain conditions are satisfied. In the first provision, the ten-times fee provision is triggered only if DRK Photo chooses to make "a retroactive license . . . available." (Doc. 10-4 at Ex. 6 at 23 ["[A] retroactive license *can be made available* at a fee of ten (10) times the normal reproduction charge . . . .], emphasis added.) The second provision applies if Scholastic pays ten times the maximum price "within ten (10) days of [DRK Photo] billing such fee." (*Id.* at Ex. 7 at 25.) However, the complaint doesn't allege that DRK Photo made retroactive licenses available or billed Scholastic for the unlicensed uses of the photographs.[9] Thus, the factual allegations in the complaint suggest Scholastic used the 67 photographs in an unlicensed manner—conduct that sounds in copyright infringement, not contract. *See, e.g., MDY*

---

[9] Although Scholastic has proffered extrinsic evidence suggesting it made a request for such invoices in December 2018 and separately discussed the possibility of making a request for invoices in 2011/2012 (Doc. 10 at 8 n.2), the Court cannot consider this extrinsic evidence at the motion-to-dismiss stage. *Marder*, 450 F.3d at 448.

*Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 940 (9th Cir. 2010) ("To recover for copyright infringement based on breach of a license agreement, (1) the copying must exceed the scope of the defendant's license and (2) the copyright owner's complaint must be grounded in an exclusive right of copyright (e.g., unlawful reproduction or distribution).") (citation omitted).

C. **Statute Of Limitations**

Scholastic argues any remaining claims are barred by the statute of limitations. It asserts that copyright actions must be "commenced within three years after the claim accrued." (Doc. 10 at 12-15.) Scholastic acknowledges that the Ninth Circuit has historically employed the "discovery rule"—which provides that a claim accrues when the copyright infringement is discovered—but argues the discovery rule is no longer viable following the Supreme Court's decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014). Scholastic contends the Court should instead employ the "injury rule," which provides that a claim accrues when the injury actually occurs, because "it makes better sense." (*Id.*) In any event, Scholastic asserts that, if the Court chooses to employ the discovery rule, Plaintiffs' claims are still barred because Plaintiffs actually discovered the license excesses more than three years ago. (*Id.*)

In response, Plaintiffs argue: (1) the discovery rule is still viable in the Ninth Circuit and the Supreme Court didn't abrogate it in *Petrella*; (2) whether the statute of limitations has expired "is a fact-based inquiry" and thus "an improper ground for seeking dismissal at the pleading stage"; and (3) Scholastic has improperly produced extrinsic evidence in support of its statute-of-limitations argument, which cannot be considered at the motion-to-dismiss stage. (Doc. 12 at 18-23.)

The Court agrees with Plaintiffs on all of these points. *Petrella* did not abrogate the discovery rule in the Ninth Circuit. In *Petrella*, the Supreme Court explained that "[a] claim *ordinarily* accrues 'when [a] plaintiff has a complete and present cause of action.'" 572 U.S. at 670 (citation omitted and emphasis added). However, the Court observed that "nine Courts of Appeals have adopted, as an alternative to the incident of injury rule, a

'discovery rule,'" and noted that it "ha[d] not passed on the question" of whether the "discovery rule" remains viable in copyright actions. *Id.* at 670 n.4. Thus, *Petrella* didn't reject the discovery rule and it remains viable in the Ninth Circuit. *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 2015 WL 12752881, *8 (C.D. Cal. 2015) ("The Court [in *Petrella*] acknowledged, however, and did not disapprove, a 'discovery rule.'").

Applying the discovery rule, the Court cannot dismiss Plaintiffs' complaint at this early stage. The date a plaintiff discovers copyright infringement "is an issue of fact." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707 (9th Cir. 2004) (citation omitted). Thus, "[w]hen a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (citation omitted). In other words, the statute of limitations defense "may be raised by a motion to dismiss" only if "the running of the statute is apparent on the face of the complaint." *Id.*

Here, the complaint doesn't mention when Plaintiffs discovered the alleged infringement by Scholastic.[10] Therefore, Scholastic's motion to dismiss based on expiration of the statute of limitations must be denied.

Accordingly, **IT IS ORDERED** that Scholastic's motion to dismiss for failure to state a claim (Doc. 10) is **denied**.

Dated this 17th day of July, 2019.

Dominic W. Lanza
United States District Judge

---

[10] Scholastic argues Plaintiffs discovered the alleged infringement of many licenses in 2011. (*See* Doc. 10 at 14.) In support of this claim, Scholastic cites the affidavit of Edward H. Rosenthal, one of its attorneys. Once again, the Court can't consider such extrinsic evidence at the motion-to-dismiss stage. *Marder*, 450 F.3d at 448.